PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION, UNITED UTOMOBILE, AEROSPACE AND GRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), | ) ) ) ) ) CASE NO. 4:19CV0420 |
| Plaintiff, | ) ) JUDGE BENITA Y. PEARSON ) |
| v. | ) ) |
| GENERAL MOTORS LLC, | ) **MEMORANDUM OF OPINION** ) **AND ORDER** |
| Defendant. | ) [Resolving ECF No. 15] |

Pending is Defendant's motion to transfer venue from the Northern District of Ohio ("OHND") to the Eastern District of Michigan ("EDMI") pursuant to 28 U.S.C. § 1404(a) (ECF No. 15). The Court has been advised, having reviewed the parties' briefs and submissions, and the applicable law. For the reasons set forth below, the motion is denied.

**I.**

On February 26, 2019, Plaintiff International Union, United Automobile, Aerospace and Agricultural Implement Workers of America UAW ("the Union") filed a Complaint (ECF No. 1) alleging that Defendant General Motors, LLC ("GM") breached a letter agreement (entitled Doc. No. 13, Plant Closing and Sale Moratorium (ECF No. 1-1 at Pages 380-81 of 736), incorporated as part of the parties' collective bargaining agreement ("CBA"), by closing or idling three plants at which the Union represents GM employees. The plants are Lordstown Assembly in Lordstown, Ohio; Baltimore Operations in White Marsh, Maryland; and Warren Transmission

(4:19CV0420)

Operations, in Warren, Michigan.[1]  As of January 31, 2019, the Lordstown plant employed 1,204 UAW active employees in the OHND, while the Warren, Michigan and Baltimore, Maryland plants employed 233 and 183, respectively.  Declaration of Michael R. Cox (ECF No. 19-1) at PageID #: 945-46, ¶¶ 2-4.  The Complaint (ECF No. 1) alleges that Defendant breached Doc. No. 13 because GM decided to close the plants after promising not to do so unless conditions "beyond the control of the Company" were such that it was "impossible" to keep them open. ECF No. 1-1 at Pages 380 of 736.  The Union, on behalf of the employees, both in Lordstown and at the other plants, seeks rescission of the plant closures, and an award of damages "to make affected employees whole for all losses resulting from the Company's breach of contract, including, but not limited to, back wages and benefits."  ECF No. 1 at PageID #: 5, ¶ C.

In response to the Complaint (ECF No. 1), Defendant filed the within motion, an Answer (ECF No. 16), and a Rule 12(b)(6) Motion to Dismiss or, in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings (ECF No. 14).  GM admits that the minimum requirements for

---

[1] In January 2019, the Union filed another case against GM.  See *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America - UAW v. General Motors LLC*, No. 4:19CV0013 (N.D. Ohio filed Jan. 2, 2019) (Pearson, J.).  In that related case, the Union alleges that GM breached the CBA regarding the transfer of seniority employees laid off from the Lordstown plant and elsewhere to other GM plants.  The same counsel represents GM in the case at bar and the related case.  GM raised no objection to venue in its Answer (ECF No. 14) to the related case.

2

(4:19CV0420)

venue exist under 29 U.S.C. § 185[2] and 28 U.S.C. § 1391(b) (general venue statute specifying where a "civil action may be brought"). *See* ECF No. 16 at PageID #: 878, ¶ 3.

## II.

Section 1404(a), 28 U.S.C. permits a change of venue for the convenience of parties and witnesses as well as the interest of justice. It provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . . The following factors enter into a court's consideration of a motion for change of venue:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the interests of justice; and (4) whether the civil action might have been brought in the district to which the movant requests a transfer.

*Roberts Metals, Inc. v. Florida Properties Marketing*, 138 F.R.D. 89, 91-92 (N.D. Ohio 1991) (Batchelder, J.), *aff'd* No. 93-1562, 1994 WL 84735 (Fed. Cir. March 14, 1994). Furthermore, two additional factors that courts consider are the plaintiff's choice of forum and the respective docket loads of the two district courts. *Id.* at 92, n. 2; *Pace Indus. Union-Mgmt. Pension Fund v. King Soopers, Inc.*, No. 3:11-cv-00148, 2011 WL 1481306, at *1 (M.D. Tenn. April 18, 2011)

---

[2] 29 U.S.C. § 185(c) provides:
For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

*See International Union, UAW v. Aluminum Co. of America*, 875 F. Supp. 430, 432 (N.D. Ohio 1995) (O'Malley, J.) (venue is proper "in any district where the union represents employees").

(4:19CV0420)

(courts also consider, and give some degree of deference to, the plaintiff's choice of forum).  *See also Armco, Inc. v. Reliance National Insurance Company*, No. C-1-96-1149, 1997 WL 311474, at *4 (S.D. Ohio May 30, 1997) ("the balance need not be 'strongly in favor' of the party seeking the transfer, but rather need only favor the party seeking the transfer"); *Hite v. Norwegian Caribbean Lines*, 551 F. Supp. 390, 394 (E.D. Mich. 1982).  The language of the statute also indicates that the Court has broad discretion in ruling on such motions.  *Mead Data Central, Inc. v. West Publishing Co.*, 679 F.Supp. 1455, 1457 (S.D.Ohio 1987) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

As this Court stated in *Tyler v. Sento Corp.*, No. 5:08CV1047, 2008 U.S. Dist. LEXIS 123709 (N.D. Ohio Oct. 17, 2008) (Pearson, M.J.):

> Where several fora are available in which to try a case, some inconvenience to one or more parties will exist no matter which forum is chosen.  Consequently, if a change of venue serves merely to shift the inconvenience from the plaintiff to the defendant, a change of venue is improper.  Consistent with that principle, a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district is generally insufficient to support a change of venue.  Rather, the defendant must show a specific hardship involved in transporting documents to the plaintiff's chosen district and must also show that witnesses (usually third party witnesses, rather than employees of the defendants) are unwilling to attend a trial in that forum.

*Id.* at *27-28 (citations omitted).

### III.

GM asserts six reasons why the case at bar should be transferred to the EDMI.  First, this case alleges breach of Doc. 13, the letter agreement (ECF No. 1-1 at Pages 380-81 of 736), that was negotiated in the EDMI.  Second, the CBA and Doc. 13, Plant Closing and Sale Moratorium were executed by all parties in the EDMI.  Third, both parties maintain their headquarters in the

4

(4:19CV0420)

EDMI. Fourth, the decision to unallocate[3] product from plants in three locations was made in the EDMI. *See* Declaration of Scott Sandefur (ECF No. 15-1) at PageID #: 875, ¶ 4 ("All of the discussions occurred at GM and UAW offices in Detroit, Michigan."). Fifth, one of the plants about which a product unallocation decision was made is in Warren, which is in the EDMI; and a second plant is in White Marsh, in the District of Maryland. Sixth, all of the witnesses involved with the negotiation, execution, and unallocation decision, including the discussions relating to whether Doc. 13 applies to the product allocation decisions relating to the three plants, are located in the EDMI.

### A. The Convenience of the Parties

Defendant argues that the convenience of the parties "would be greatly enhanced" if the case were transferred to the EDMI. Memorandum in Support (ECF No. 15) at PageID #: 865. GM contends "[t]he ***only*** 'connection' that this dispute has to this Judicial District is the fact that the Lordstown facility is located here." ECF No. 15 at PageID # 864 (emphasis in original). Defendant contends "this dispute focuses on the execution of the CBA and Doc. 13," ECF No. 15 at PageID #: 864, and "relates to the contract negotiations between the UAW and GM regarding the terms and conditions of Doc. 13," ECF No. 15 at PageID #: 861. This argument is not well taken.

---

[3] According to Plaintiff, GM, in announcing the closures, and in court filings, uses "unallocated." The reality is that the plants are — or soon will be — closed, and employees will not be working at them. Memorandum in Opposition (ECF No. 19) at PageID #: 929.

5

(4:19CV0420)

That Lordstown, the largest of the three plants involved in the litigation, is located in the OHND, is of a significance not appropriately appreciated by GM's argument. Additionally, GM overlooks that the Complaint (ECF No. 1) focuses on the breach of the Plant Closing and Sale Moratorium due to the plant closures themselves, not merely Doc. 13's execution or negotiation.

The convenience of the parties does not weigh in favor of transferring venue.

### B. The Convenience of the Witnesses

GM argues that Michigan would be more convenient for it and its witnesses ― an argument that tracks closely with the convenience of the parties factor. According to Defendant, the "specific legal dispute presented" in the case at bar is whether there has been a breach of the CBA or Doc. 13. ECF No. 15 at PageID #: 866. Defendant contends "[t]here are, in fact, ***no witnesses*** located within this District who will be relevant ― let alone necessary ― to the discussion regarding the parties' negotiations and execution of the CBA and Doc. 13, as well as the parties' negotiations relating to GM's product allocation decisions." ECF No. 15 at PageID #: 866 (emphasis in original). GM's argument misses its mark.

The remedy sought in the case at bar is the backpay and benefits necessary to make the employees that were employed here at the Lordstown plant and elsewhere whole, as well as rescission of the plant closures. Discovery related to these damages issues will be necessary. These witnesses should not be inconvenienced by being required to travel to Michigan simply for the convenience of GM representatives.

Proceeding in the OHND would not preclude depositions in Michigan. *See, e.g.*, *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013) ("[W]itnesses can be deposed, examined, and

6

(4:19CV0420)

cross-examined remotely and their videotaped testimony shown at trial."). The Union has also stated a willingness to travel to Detroit to conduct depositions of GM representatives. ECF No. 19 at PageID #: 937 n. 7. That will undoubtedly ameliorate some of the inconvenience likely to be felt by those witnesses. Moreover, Union witnesses will come to hearings in this District. ECF No. 19 at PageID #: 941.

Finally, the OHND is centrally located between the GM plants in White Marsh, Maryland, and Warren, Michigan. While no district will be convenient for every witness, this District will be convenient for many witnesses, and is the District with the greatest nexus to the operative facts upon which the claims are based and where GM's "unallocation" decision will be felt most acutely. *See, e.g.*, *United States v. West Coast News Co.*, 30 F.R.D. 13, 24 (W.D. Mich. 1962) (denying defendants' motion to transfer criminal action to the Southern District of California where defendants were located and finding "[i]t is obvious that no district will be convenient for all of the witnesses").

GM's argument on convenience of witnesses does not weigh in favor of transferring venue.

### C.  The Interests of Justice

GM argues the interests of justice considerations are neutral, and do not weigh against transferring venue to the EDMI. ECF No. 15 at PageID #: 867-68; Reply Memorandum (ECF No. 20) at PageID #: 966-68. Again, GM's argument misses the mark.

This factor does not weigh in favor of transfer. The case at bar and Case No. 4:19CV0013 both arise in large part from the dislocation of employees occasioned by the

7

(4:19CV0420)

layoffs, and ultimately, the closing of the Lordstown plant. Judicial economy is served by sorting out these issues relating to plant closure, transfer, and damages in the same district before the same District Judge. Moreover, the undersigned has prior experience with the CBA and the Lordstown plant. *See Dragomier v. UAW*, No. 4:11CV0862 (N.D. Ohio filed April 30, 2011) (Pearson, J.) (granting summary judgment to employer and labor unions in collective bargaining agreement case), *aff'd*, 620 Fed.Appx. 517 (6th Cir. 2015).

The interests of justice weigh in favor of denying the motion to transferring venue.

### D. Whether the Case Might Have Been Brought in the EDMI

Plaintiff wisely offers no opposition to Defendant's argument that the EDMI is a proper forum for this dispute.

### E. Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally given substantial weight. *Roberts Metals, Inc.*, 138 F.R.D. at 92. A defendant requesting a transfer of venue, bears a heavy burden in opposing the plaintiff's chosen forum. *Handel's Enterprises, Inc. v. Schulenburg*, No. 4:18CV0508, 2018 WL 3097416, at *6 (N.D. Ohio June 22, 2018) (Pearson, J.) (citing *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007)). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) (quoting *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The Union has a Regional Office in Maumee, which is in the OHND. The Regional Office houses the Regional Director, the Assistant Regional Director, and 18 International

8

(4:19CV0420)

Representatives, who service bargaining units throughout Ohio.  Declaration of Richard Rankin (ECF No. 19-2) at PageID #: 947, ¶¶ 1 and 2.  Twelve of these representatives primarily service 178 bargaining units in the OHND.  ECF No. 19-2 at PageID #: 947, ¶ 2.

The vast majority   74 percent   of the employees affected by the plant closures were employed in the OHND.  *See Int'l Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430, 433 (N.D. Ohio 1995) (O'Malley, J.) (denying transfer when "nearly one half of the class members" reside in the OHND).  Many, that is 1,204, UAW active employees were laid off due to the decision by Defendant to unallocate product from the Lordstown plant.  ECF No. 19-1 at PageID #: 945, ¶ 2.  The closing has a substantial connection to this forum, and GM's claim that the decision to close the plant was reached in the corporate suites in Detroit provides no basis for rejecting the Union's choice of forum.  The harm caused by GM's "unallocation" decision will have the greatest impact in the OHND, not at GM headquarters.

### F. The Respective Docket Loads of the Two District Courts

Defendant argues that the EDMI has a lighter caseload per judge than the OHND.  GM cites the annual report regarding the Civil Federal Judicial Caseload Statistics for the Reporting Period Ending March 31, 2018. https://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2018/03/31 (last visited May 6, 2019).  According to that report, the EDMI had 5,009 pending civil cases as of that date, while the docket load for the OHND was at 4,700 pending civil cases.[4]  The EDMI

---

[4] The following appears at the bottom of the Excel spreadsheet:
NOTE:  The number of pending cases in this report includes cases that

(continued...)

(4:19CV0420)

currently has 21 District Judges serving to manage that civil caseload, *see* https://www.mied.uscourts.gov/ (last visited May 6, 2019), whereas in 2017, there were 12 District Judges serving the OHND, *see* https://www.ohnd.uscourts.gov/annual-reports-assessments (last visited May 6, 2019). According to Defendant, "the District Judges in the Northern District of Ohio are, on average, overseeing as many as 391 different civil cases, while the District Judges in the EDMI are currently overseeing, on average, as many as 238 different civil cases." ECF No. 20 at PageID #: 971.

These numbers tell only part of the story. While hardworking, the OHND benefits from having several cases of a similar nature. For instance it has several asbestos cases remanded from the Eastern District of Pennsylvania as part of the MDL 875 Asbestos Litigation. Four other MDL actions are also pending in this Court. Excluding MDL and asbestos cases, there were 2,291 pending civil cases in the OHND at the end of Calendar Year 2017. *Annual Assessment of the Civil and Criminal Dockets for Calendar Year 2017*, U.S. District Court Northern District of Ohio, at pg. 3. (https://www.ohnd.uscourts.gov/annual-reports-assessments

---

[4](...continued)
have been transferred under a Multidistrict Litigation (MDL) order. Large numbers of civil cases may be temporarily assigned by the Judicial Panel on Multidistrict Litigation to a district judge for pretrial management. As MDL cases vary greatly among districts, it is advisable to check with the relevant district court before drawing statistical conclusions about the number of pending cases for that district.

(4:19CV0420)

(last visited May 6, 2019). Therefore, the 12 District Judges serving the OHND were, on average, overseeing 191 different civil cases at the end of 2017.

This final factor weighs against transferring venue to the EDMI.[5]

## IV.

Plaintiffs have chosen the OHND as their forum. The Court affords substantial weight to that decision and Defendant has not sufficiently rebutted it or met its burden of showing that the balance of all relevant factors favors transfer.

Accordingly, Defendant's Motion to Transfer Venue to the Eastern District of Michigan Pursuant to 28 U.S.C. § 1404(a) (ECF No. 15) is denied.


IT IS SO ORDERED.


| May 6, 2019 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[5] The same conclusion would be reached for the most recent Statistical Table for the Federal Judiciary. Civil Federal Judicial Caseload Statistics for the Reporting Period Ending December 31, 2018.
https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2018/12/31 (last visited May 6, 2019).